UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-20725-Civ-COOKE/GOODMAN

HOUSTON SPECIALTY INSURANCE
COMPANY,

      Plaintiff,

vs.

DANIELA FONTECILLA, an individual;
LAW OFFICES OF DANIELA
FONTECILLA, P.A., a Florida corporation;
and OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY, a Florida
corporation,

Defendants.
_____/

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION TO DISMISS

**THIS MATTER** is before the Court on Defendant Old Republic National Title Insurance Company's Motion for Summary Judgment or, In the Alternative, Motion to Dismiss (the "Motion") (ECF No. 43), filed September 11, 2020. Plaintiff Houston Specialty Insurance Company ("Plaintiff") filed its response in opposition to the Motion on September 25, 2020. ECF No. 54. And Defendant Old Republic National Title Insurance Company ("Defendant" or "Old Republic") filed its reply in support of the Motion on October 2, 2020. ECF No. 61. Accordingly, the Motion is ripe for adjudication.

The Court having reviewed the Motion, the briefing related thereto, the record, and the relevant legal authorities finds, for the reasons discussed below, that the Motion should be denied in part and granted in part.

## Background

Through this action Plaintiff seeks a declaration of its rights and obligations with respect to providing defense and indemnification for Defendants Daniela Fontecilla ("Fontecilla") and Defendant Law Offices of Daniela Fontecilla (the "Firm") in a separate

state court action (the "Underlying Lawsuit").[1] Plaintiff issued a Title Agents, Abstractors And Escrow Agents Errors And Omissions Liability Insurance policy, Policy Number TE01001550-02 (the "Policy"), to Daniela Fontecilla, P.A. and the Law Offices of Daniela Fontecilla P.A., which has a policy period from January 5, 2018 to January 5, 2019. ECF No. 1 at ¶ 11. Plaintiff is defending Fontecilla and the Firm in the Underlying Lawsuit subject to a reservation of rights under the Policy. *Id.* at ¶ 61.

Plaintiff attached the complaint filed in the Underlying Lawsuit as Exhibit B to its Complaint in this action.[2] *See* ECF No. 1-3. In relevant part, Plaintiff summarizes the allegations and claims asserted in the Underlying Lawsuit as follows:

> On October 25, 2019, Old Republic filed a lawsuit for damages against Fontecilla and the Firm in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida styled *Old Republic National Title Ins. Co. v. Daniela Fontecilla, Law Offices of Daniela Fontecilla, P.A.*, Case No. 2019-031646-CA-01. ECF No. 1 at ¶ 23. In the Underlying Lawsuit, Old Republic seeks recovery of damages against Fontecilla and the Firm arising out of closings on two loans on February 15, 2018 and March 13, 2018 for which Fontecilla and the Firm acted as the closing and escrow agent and the title policy issuing agent for Old Republic. *Id.* at ¶ 24. In its Complaint, Old Republic alleges that Fontecilla and the Firm were title policy issuing agents with limited authority to issue title commitment and policies on behalf of Old Republic for loans secured by real property in Florida. *Id.* at ¶ 25. Old Republic alleges that Fontecilla and the Firm "were not authorized to commit the company to

---

[1] Collectively, Defendant Daniela Fontecilla and Defendant Law Offices of Daniela Fontecilla shall be referred to herein as the Fontecilla Defendants.

[2] "As a general rule, the Court must 'limit[ ] its consideration to the pleadings and exhibits attached thereto' when deciding a Rule 12(b)(6) motion to dismiss." *Eli Lilly & Co. ex rel. Nat. Union Fire Ins. Co. of Pittsburgh, Pa. v. Tyco Integrated Sec., LLC*, 13-80371-CIV, 2014 WL 835766, at *1 (S.D. Fla. Mar. 4, 2014) (quoting *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir.2000) (internal quotation marks and citation omitted)). However, "a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n. 2 (11th Cir.1999)). "'Undisputed' in this context means that the authenticity of the document is not challenged." *Id.* "In determining whether a document is central to a plaintiff's claim, courts have considered whether the document is referenced throughout the complaint and whether the plaintiff would have to offer a copy of the article to prove his case." *Roberts v. Gordy*, 13-24700-CIV, 2015 WL 11202323, at *3 (S.D. Fla. Feb. 6, 2015) (citations omitted). Here, because the complaint in the Underlying Lawsuit is central to Plaintiff's claims and undisputed, the Court can and will consider it for purposes of resolving Old Republic's Motion to Dismiss.

risk in excess of $1m by issuing policies over that amount without prior authorization from Old Republic." *Id.* at ¶ 26. The Complaint states that Fontecilla and the Firm served as the closing agent for the two loans with a private lender named TCM PP I, LLC ("TCM") to be secured by real property located in Florida—referred to in Old Republic's Complaint as "the Bacon Loan" and "the V&H Loan"—which closed on February 15, 2018 and March 13, 2018, respectively. *Id.* at ¶ 27.

Old Republic alleges that Fontecilla and the Firm's duties in connection with the two loans included "obtaining properly executed loan documents by a person with authority to mortgage the subject real properties, verifying the identity of the borrower and mortgagor, and receiving and properly disbursing the loan proceeds." *Id.* at ¶ 28. The Complaint states that TCM approved the loans and wired the funds to Fontecilla and the Firm to be held in trust pending further disbursement to the borrower and others. *Id.* at ¶ 29. Old Republic alleges that Fontecilla and the Firm sent the net borrower proceeds by wire transfers issued to the accounts of "Bacon Properties LLC" and "V&H Ventures LLC" at BB&T Bank, using wiring instructions the purported borrowers provided to the Defendants. *Id.* at ¶ 30. Old Republic issued the title insurance policies (through Fontecilla and the Firm as the title agents) for the Bacon Loan and the V&H Loan in reliance on the Defendants' performance of their duties as escrow, title and closing agent. *Id.* at ¶ 31.

It was later discovered that imposters purporting to act on behalf of the property owners executed the loan documents but were not associated with and did not have authority to act on behalf of Bacon and V&H. The real Bacon and V&H never authorized the respective loans nor received any of the loan proceeds. *Id.* at ¶ 32. Old Republic alleges in the Complaint that the Broward County public records contained recorded information, if such inquiry had been made and pursued, revealing that "Thomas Bacon" had no affiliation with the borrower, and, in fact, was an imposter that had no authority to act for Bacon. *Id.* at ¶ 33. Similarly, Old Republic alleges that the Broward County public records contained recorded information, if such inquiry had been made and pursued, revealing that the person purporting to act as Benjamin Getler was an imposter and had no authority to act for V&H. *Id.* at ¶ 34. Old Republic alleges that Fontecilla did not make such inquiries and failed to verify the identities of the persons purporting to act on behalf of the borrowers, although such verification was available prior to closing using reasonable, inexpensive, and readily accessible means. *Id.* at ¶ 35.

Old Republic further alleges that Fontecilla and the Firm allowed the loan documents to leave their possession, custody and control and to be executed outside of their presence. *Id.* at ¶ 36. The Complaint states that with respect to the V&H Loan, Fontecilla and the Firm issued a mortgage policy in favor of V&H for $1,300,000, which exceeded the authorized limit under their agency agreements with Old Republic, without getting Old Republic's prior approval to do so. *Id.* at ¶ 37. The Underlying Complaint states that TCM made claims to Old Republic, as the title insurer on the loans, for indemnification of its losses under the loans. *Id.* at ¶ 38.

With respect to the Bacon Loan, Old Republic paid TCM $700,607.50 to settle its claim, and for the V&H Loan, Old Republic paid $1,088,025.85 to settle the claim. In exchange, TCM assigned all of its rights and claims against Fontecilla and the Firm to Old Republic. *Id.* at ¶ 39. Old Republic alleges it is now holder of the Bacon

Note, the V&H Note, and all of TCM's claims against Fontecilla and the Firm with respect to the Bacon Loan and the V&H Loan. *Id.* at ¶ 40. It also claims it has its own direct rights and claims against the Defendants. *Id.*

Count I of the Underlying Complaint states a claim for negligence against Fontecilla and the Firm with respect to the Bacon Loan. *Id.* at ¶ 41. In Count I, Old Republic alleges that as the closing and escrow agent on the Bacon Loan, Fontecilla and the Firm owed a duty of care to ensure the proper execution of the loan documents and disbursement of the loan funds so that the Bacon loan would be enforceable and valid. *Id.* at ¶ 42. In reliance that the Defendants would faithfully execute their duties, TCM funded the Bacon Loan and Old Republic issued a title insurance policy insuring the Bacon Loan for TCM. *Id.* at ¶ 43. Old Republic alleges that the Defendants breached their duty of care in part by failing to confirm that the person appearing on behalf of Bacon to execute the Bacon Loan documents was in fact authorized and by improperly disbursing the loan proceeds. *Id.* at ¶ 44. As a result, TCM was damaged in that it funded the loan and Old Republic was damaged in that it became obligated to pay TCM to satisfy the Bacon Mortgage. *Id.* at ¶ 45.

Count II for negligence contains similar allegations as Count I with respect to the V&H Loan. *Id.* at ¶ 46. Counts III and IV of the Complaint are for breach of contract with respect to the Bacon Loan (Count III) and the V&H Loan (Count IV). *Id.* at ¶ 48.

In Counts III and IV, Old Republic alleges that Fontecilla and the Firm agreed with TCM to serve as the closing, escrow, and title agent for the loans and, as such, owed duties to TCM to ensure the loan documents were properly executed, including that the person executing them was authorized to bind the property owner, and that the loan proceeds were properly disbursed. *Id.* at ¶ 49. In reliance upon the Defendants faithfully executing their duties, TCM funded the loans and Old Republic issued the title insurance policies insuring the Bacon Loan and the V&H Loan. *Id.* at ¶ 50. Old Republic alleges Fontecilla and the Firm breached their duties by failing to: retain control over the closing and loan documents, ensure that the loan documents were properly executed, ensure the proper disbursement of the funds. *Id.* at ¶ 51.

With respect to the V&H Loan, Old Republic further alleges that the Defendants breached their duty to remain within their limit of contractual authority by issuing the V&H mortgagee policy for $1,300,000. *Id.* at ¶ 52.

In Count V of the Underlying Complaint for breach of the agency agreements, Old Republic alleges that the agency agreements make Fontecilla and the Firm liable for the losses caused to Old Republic. *Id.* at ¶ 54. Old Republic alleges the Defendants improperly conducted the loan closings by failing to verify the identities of the borrowers and the purported borrowers' authority to execute binding loan documents. *Id.* at ¶ 55.

In Count VI for contractual indemnity, Old Republic alleges that the Defendants should have taken steps, as the closing, settlement, title and escrow agent for the loans, to ensure that the errors and omissions giving rise to this claim did not occur, particularly to confirm the identities of the borrowers and their authority to execute the loan documents. *Id.* at ¶ 57. It further alleges that the Defendants owed duties to stay within their limits of policy issuing authority and to properly disburse the loan proceeds. *Id.* at ¶ 58.

Count VII of the Complaint is a cause of action for common law indemnity based on the same alleged errors and omissions as in Count VI. *Id.* at 60.

**I.    Analysis: Motion to Dismiss**

In its Motion, Old Republic seeks summary judgment based upon its interpretation of the terms of the Policy between Plaintiff and the Fontecilla Defendants, and, alternatively, Old Republic requests that this Court use its discretionary authority to dismiss this action in favor of the Underlying Lawsuit. The Court will address each of these arguments in turn; however, because abstention is a threshold issue, the Court will address Old Republic's request for dismissal first.

### Declaratory Judgment Legal Standard

It is well within the Court's discretion to decide whether it should entertain a case under the Declaratory Judgment Act, 28 U.S.C. section 2201, even where the action properly falls within the Court's jurisdiction. *See Otwell v. Ala. Power Co.*, 747 F.3d 1275, 1280 (11th Cir. 2014) ("It is well established that district courts have exceptionally broad discretion in deciding whether to issue a declaratory judgment, and the remedy is not obligatory.") (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–88 (1995)). The Declaratory Judgment Act gives the federal courts competence to make a declaration of rights; however, it does not impose a duty to do so. *See Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942).

As explained in *Wilton*, "[b]y the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." 515 U.S. at 288. Accordingly, "a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." *Id.* "[S]pecial flexibility is called for in the declaratory judgment context, where the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *United Purchasing Ass'n, LLC v. Am. Valve, Inc.*, No. 6:08-cv-515, 2008 WL 2557559, at *1 (M.D. Fla. June 20, 2008) (quotation marks and citations omitted).

In *Ameritas Variable Life Insurance Company v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) the Eleventh Circuit reiterated that the Declaratory Judgment Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so."

411 F.3d at 1330 (citation omitted). Moreover, "[t]he desire of insurance companies ... to receive declarations in federal court on matters of purely state law has no special call on the federal forum." *Travelers Prop. Cas. Co. of Am. v. Chip Yachting Team, Inc.*, 18-CIV-60828, 2018 WL 3084063, at *2 (S.D. Fla. June 21, 2018) (quoting *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 136 (3d Cir. 2000)).

In *Ameritas*, the Eleventh Circuit propounded a non-exhaustive, non-absolute list of factors that a district court should consider in determining "whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in state courts." 411 F.3d at 1331. These factors include: (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (2) whether the judgment in the federal declaratory action would settle the controversy; (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue; (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" — that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case not otherwise removable; (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; (6) whether there is an alternative remedy that is better or more effective; (7) whether the underlying factual issues are important to an informed resolution of the case; (8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action. *Ameritas*, 411 F.3d at 1331.

Moreover, in conducting the *Ameritas* analysis, a district court can abuse its discretion if it: "(1) fails to consider a relevant factor that should have been given significant weight, (2) considers and gives significant weight to an irrelevant or improper factor, or (3) considers all proper factors, and no improper [factors] . . . but . . . , in weighing those factors, commits a clear error of judgment." *First Mercury Ins. Co.*, 648 F. App'x at 865 (alterations in original; quotation marks and citation omitted). The *Ameritas* factors, however, are "neither absolute nor is any one factor controlling;" instead, they "are merely guideposts in furtherance of the Supreme Court's admonitions in *Brillhart* and *Wilton*." *Ameritas*, 411 F.3d at 1331. Further, "the district court 'has no obligation to consider each and every factor on the list and it is free

to consider any other factors it deems relevant or significant.'" *Chip Yachting Team, Inc.*, 2018 WL 3084063, at *2 (quoting *Mount Vernon Fire Ins. Co. v. 8010 S. Lake Drive, LLC*, 2013 WL 12089975, at *2 (S.D. Fla. Oct. 3, 2013) (citing *Great Lakes Reinsurance (UK) PLC v. TLU Ltd.*, 298 F. App'x 813, 815 (11th Cir. 2008) (per curiam)).

"[A] court does not reach the *Ameritas* analysis unless it determines first that the parties and issues in the federal and state actions are sufficiently similar [such] that they are parallel." *Amerisure Mut. Ins. Co. v. Plantation Key Off. Park, LLLP*, No. 11-60136-Civ, 2011 WL 2436693, at *3 (S.D. Fla. June 14, 2011) (alteration added; citation omitted). Meaning, "as a threshold matter, there must be 'parallel litigation in the state courts,' i.e., 'another suit pending in a state court presenting the same issues, not governed by federal law, between the same parties.'" *N. Assur. Co. of Am. v. Custom Docks by Seamaster, Inc.*, No. 8:10-cv-1869, 2011 WL 117046, at *2 (M.D. Fla. Jan. 13, 2011) (alteration adopted; quoting *Ameritas*, 411 F.3d at 1330–31; other citation omitted). Indeed, "[i]t is an abuse of discretion . . . to dismiss a declaratory judgment action in favor of a state court proceeding that does not exist." *Fed. Reserve Bank of Atlanta v. Thomas*, 220 F.3d 1235, 1247 (11th Cir. 2000) (citing *Mich. Tech Fund v. Century Nat'l Bank of Broward*, 680 F.2d 736, 742 (11th Cir. 1982)).

Considering all relevant aspects of this federal action and the Underlying Lawsuit, the Court concludes that the actions are not parallel. While some courts have found "it is not necessary for [an insurer] to be a party to the [u]nderlying [a]ction in order to conclude the parties involved in both actions are similar[,]" *Falls Lake Nat'l Ins. Co. v. Am. Shuttle, Inc.*, No. 1:17-cv-24421, 2018 WL 8244524, at *3 (S.D. Fla. Aug. 13, 2018) (alterations added), the fact that Plaintiff is not a party to the Underlying Lawsuit, coupled with the fact that insurance coverage is not an issue before the state court, support the conclusion that the two cases are not parallel. *See Amerisure Mut. Ins. Co. v. M & R Drywall, Inc.*, No. 10-60962-Civ, 2011 WL 817643, at *5 (S.D. Fla. Jan. 28, 2011), report and recommendation adopted, 2011 WL 810261 (S.D. Fla. Mar. 2, 2011) (finding that "although the [state suit] might be related to this action, it is not a parallel proceeding" because the issue facing the district court there was whether the defendant should be afforded liability coverage whereas the issue in the state suit was whether the defendant and others were substantively liable for construction defects (alteration added)); *N. Assur. Co. of Am.*, 2011 WL 117046, at *2 (declining to dismiss the action under *Ameritas* because the defendants did not demonstrate that there was a state-court

proceeding that would resolve the question whether the plaintiff insurer was required to defend or indemnify its insured, the insurance coverage issue was not before the state court in the underlying action, and the insurer was not a party to that action); *Auto-Owners Ins. Co. v. Emerald Star Casino & Resorts, Inc.*, No. 809-cv-1129, 2009 WL 3446745, at *2 (M.D. Fla. Oct. 21, 2009) (concluding state action was not parallel to federal coverage action because the insurer was not a party to the underlying suit and the coverage issues presented in the federal action were not before the state court).

Here, there is no parallel state action; the Underlying Lawsuit is merely a related state action.[3] "In such circumstances, courts have shown marked reluctance to exercise their discretion to stay or dismiss the declaratory judgment action." *State Farm Fire & Cas. Co. v. Knight*, No. Civ.A. 09-0783, 2010 WL 551262, at *3 (S.D. Ala. Feb. 11, 2010). However, in *First Mercury Ins. Co. v. Excellent Computing Distribs*, the Eleventh Circuit cautioned that it has "never held that the *Ameritas* factors apply only when reviewing parallel actions. Indeed, nothing in the Declaratory Judgment Act suggests that a district court's discretionary authority exists only when a pending state proceeding shares substantially the same parties and issues. Rather, the district court must weigh all relevant factors in this case, even though the state and federal actions [are] not parallel." 648 F. App'x 861, 866 (11th Cir. 2016). Nonetheless, "the absence of parallel proceedings is a substantial factor bearing on the [abstention] analysis." *Arch Specialty Ins. Co. v. Residences at the Bath Club Condo. Ass'n, Inc.*, 20-23164-CIV, 2020 WL 6888312, at *3–4 (S.D. Fla. Sept. 22, 2020) (quoting *Essex Ins. Co. v. Foley*, No. Civ.A. 10-0511, 2011 WL 290423, at *2 (S.D. Ala. Jan. 27, 2011) (alteration added; citation omitted). As consequence, the Court will evaluate the *Ameritas* factors even though it finds that this action is not parallel to the Underlying Lawsuit.

---

[3] Under the U.S. Supreme Court's *Wilton v. Seven Falls Co.* abstention analysis, "[s]uits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Scottsdale Ins. Co. v. Detco Industries, Inc.*, 426 F.3d 994, 997 (8th Cir.2005) (citations omitted); *see also Tyrer v. City of South Beloit, Ill.*, 456 F.3d 744, 752 (7th Cir.2006) ("Generally, a suit is parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum.") (internal quotation marks omitted). Where the declaratory judgment action is brought by an insurer against an insured, there are no parallel proceedings if "(1) the insurer was not a party to the suit pending in state court; and (2) the state court actions involved issues regarding the insured's liability, whereas the federal suit involved matters of insurance coverage." *Continental Cas. Co. v. Advance Terrazzo & Tile Co.*, 462 F.3d 1002, 1006 (8th Cir.2006) (citation omitted). That is precisely the case here.

Old Republic contends that *Ameritas* factors one, two, three, seven, eight, and nine all weigh in favor of abstention. The Court disagrees.

### A. The first factor weighs against abstention.

While the Court agrees with Old Republic that the Florida state courts have an interest in determining the issues involved in the Underlying Lawsuit (i.e. the Fontecilla Defendants' alleged negligence, breach of contract, and failure to follow proper underwriting procedures), those issues are not before the Court in this federal declaratory judgment action. As previously mentioned, in this declaratory judgment action, Plaintiff seeks a determination as to its obligations to defend and indemnify the Fontecilla Defendants in the Underlying Lawsuit. Furthermore, according to the terms of the insurance policy between Plaintiff and the Fontecilla Defendants, which was attached as Exhibit A to the Complaint in this action, "all matters arising [under the policy] including questions related to the validity, interpretation, performance and enforcement of [the policy are to] be determined in accordance with the law and practice of the State of New York." ECF No. 1-2 at p. 29.[4] Thus, the policy coverage issues between Plaintiff and the Fontecilla Defendants – which are plainly in dispute through this action – do not implicate Florida law. But even if this insurance coverage action solely involved Florida law, and there were public policy implications for Florida insurance contracts, "these considerations do not mean Florida courts 'have a particularly strong interest in deciding the coverage issues properly and exclusively before a federal court.'" *Arch Specialty Ins. Co.*, 2020 WL 6888312, at *4 (quoting *Phila. Indem. Ins. Co. v. AGCO Corp.*, No. 1:10-cv-4148, 2011 WL 2652139, at *3 (N.D. Ga. July 6, 2011)). Furthermore, a decision on Plaintiff's duty to defend would not impinge on the state court's jurisdiction as that issue is not before the state court. *See Atl. Healthcare, LLC v. Argonaut Ins. Co.*, No. 2:19-cv-14420, 2020 WL 4501833, at *5 (S.D. Fla. Jan. 17, 2020) ("There is no indication that this action would encroach on state jurisdiction. The duty-to-defend issue is not before the state court, and the nature of a declaratory judgment on [the insurer's] duty to defend — a matter of contractual interpretation — will not hamstring the state court in determining any issue before it in the

---

[4] Because the Policy is undisputed and central to Plaintiff's claims, the Court can consider the terms of the policy at the motion to dismiss stage. *See supra* note 2. As such, in accordance with the choice of law provision within the Policy, the Court will rely on New York law to resolve all issues related to validity, interpretation, performance, and enforcement of the Policy.

[u]nderlying [c]ase." (alterations added)); *Essex Ins. Co.*, 2011 WL 290423, at *3 (finding that "adjudicating [the insurer's] declaratory judgment action would [not] ... encroach on the state proceedings or cause friction between federal and state judiciaries" where "the legal issues presented are entirely distinct." (alterations added; footnote call number omitted)). Accordingly, the Court finds that the state's interest in having the issues raised in this declaratory action decided in Florida state courts is weak.

### B.  The Second Factor Militates Against Abstention.

A judgment in this insurance coverage action would not settle the controversy between the parties in the Underlying Lawsuit because, as previously discussed, the two actions are not parallel actions. As such, factor two militates against abstention.

### C.  The Third Factor Weighs In Favor of Exercising Jurisdiction.

The third factor weighs in favor of exercising jurisdiction because "this declaratory judgment action would undoubtedly clarify the legal relations of the parties by fixing [Plaintiff's] coverage obligations to [the Fontecilla Defendants] with respect to [Old Republic's tort and breach of contract] claims." *Arch Specialty Ins. Co.*, 2020 WL 6888312, at *5(quoting *State Farm Fire & Cas. Co. v. Knight*, No. Civ.A. 09-0783, 2010 WL 551262, at *3 (S.D. Ala. Feb. 11, 2010)); *see also Atl. Cas. Ins. Co. v. GMC Concrete Co.*, No. Civ.A. 07-0563, 2007 WL 4335499, at *3 (S.D. Ala. Dec. 7, 2007) ("It cannot be reasonably disputed that a declaration of insurance coverage issues would clarify the parties' legal relations."). "Indeed, abstaining from exercising jurisdiction 'pending the outcome of the underlying action would be unproductive (and would not preserve judicial or litigant resources) because the coverage issues would remain undecided in this case after the underlying action was completed.'" *Id.* (quoting *Emps. Mut. Cas. Co. v. Kenny Hayes Custom Homes, LLC.*, 101 F. Supp. 3d 1186, 1191 (S.D. Ala. 2015)).

### D.  The Seventh, Eighth, & Ninth Factors Weigh Against Abstention.

The seventh, eighth, and ninth factors weigh against abstention. With respect to these factors, Old Republic argues:

> The underlying factual issues of the fraudulent actions of the imposter and [Daniela] Fontecilla's duties to the parties to the loans and to her underwriting are important to an informed resolution of the case. Her breach of duties will be determined under controlling state law and standards in her local community governing closing, escrow and title agents. The state trial court is in a better position to decide any factual issues than is the federal court and said

> determination will avoid duplication of effort and expense if undertaken only
> once. It is true that this Court could also undertake the necessary factual
> inquiries, but that would potentially involve duplicative labor and expense of
> time and effort for all concerned. Finally, there is a close nexus between the
> underlying factual and legal issues and the state law and or public policy.

ECF No. 44 at pp. 14-15. Old Republic's arguments are unavailing.

As discussed repeatedly above, this action is **not** parallel to the Underlying Lawsuit. As a result, the Court would be hard pressed to find: that the underlying factual issues in the Underlying Lawsuit are important to an informed resolution of this insurance-coverage case; that the state trial court is in a better position to evaluate the factual issues presented here than this Court – especially given that insurance-coverage is not even at issue in the Underlying Lawsuit; or that there is a close nexus between the underlying factual and legal issues and state law and/or public policy where, again, insurance-coverage is not even at issue in the Underlying Lawsuit. Indeed, this Court has recently recognized that factors seven and eight "only favor abstention when both the state and federal courts are asked to decide the same legal or factual issues." *Arch Specialty Ins. Co.*, 2020 WL 6888312, at *6 (quoting *Accident Ins. Co. v. Greg Kennedy Builder, Inc.*, 159 F. Supp. 3d 1285, 1291 (S.D. Ala. 2016) (quotation marks and citation omitted)). That plainly is not the case here. And although the federal and state actions may have certain factual issues in common, "the mere potential for overlap of certain facts does not demand abstention where the parties and issues are not identical." *Phila. Indem. Ins. Co.*, 2011 WL 2652139, at *3. Moreover, it is immaterial that the state court may be in a better position to evaluate the facts because the Court need not make factual determinations to decide whether Plaintiff has a duty to defend the Fontecilla Defendants in the Underlying Lawsuit, and, as explained below, the Court will dismiss without prejudice Plaintiff's claims regarding the duty-to-indemnify issue as premature.

"[T]he duty to defend a suit against the insured is a present obligation existing during the pendency of [an underlying] suit, such that a dispute concerning defense obligations presents a ripe controversy." *White-Spunner Constr., Inc. v. Zurich Am. Ins. Co.*, No. 10-0158, 2010 WL 3489956, at *1 (S.D. Ala., Aug. 30, 2010) (alterations added). Indeed, "because the existence of the duty is determined by the policy and the allegations of the [underlying] complaint, its resolution need not await factual development in the underlying litigation." *Id.* (alteration added; citations omitted); *see also Composite Structures, Inc. v. Cont'l Ins. Co.*, 560 F.

App'x 861, 864 (11th Cir. 2014) ("In Florida, 'the general rule is that an insurance company's duty to defend an insured is determined solely from the allegations in the complaint against the insured, not by the actual facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses.'") (quoting *Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc.*, 771 So. 2d 579, 580–81 (Fla. 4th DCA 2000); other citation omitted)). Consequently, courts have long "recognized a controversy exists regarding the duty to defend when the insured seeks a defense from an insurance company, but the insurance company denies that it is obligated." *Atl. Cas. Ins. Co.*, 2007 WL 4335499, at *5 (quotation marks and citations omitted).

By contrast, courts in the Southern District of Florida have recognized that an insurer's "duty to indemnify is not ripe for adjudication in a declaratory judgment action until the insured is in fact held liable in the underlying suit." *Smithers Constr. Inc. v. Bituminous Cas. Co.*, 563 F. Supp. 2d 1345, 1348 (S.D. Fla. 2008) (quotation marks and citations omitted). *See Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770 (11th Cir. 2019) (recognizing that "duty to indemnify . . . is not ripe for adjudication until the underlying lawsuit is resolved."). This holds true under New York law as well. *See Allstate Ins. Co. v. Vitality Physicians Group Practice P.C.*, 20-CV-4132 (CS), 2021 WL 1750523, at *8 (S.D.N.Y. May 4, 2021) ("In New York, an insurer's duty to defend is 'exceedingly broad' and distinct from the duty to indemnify.") (citing *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014) (quoting *Auto. Ins. Co. of Hartford v. Cook*, 818 N.Y.S.2d 176, 850 N.E.2d 1152 (2006)). Indeed, New York courts recognize that "[w]hile '[t]he duty to [indemnify] is determined by the actual basis for the insured's liability to a third person,' '[t]he duty to defend is measured against the allegations of pleadings.'" *Id.* (citing *Euchner-USA, Inc.*, 754 F.3d at 140 quoting *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 488 N.Y.S.2d 139, 424 (1985)). Moreover, the duty to defend remains even if the facts outside the four corners of the pleadings indicate that the claim may be meritless or not covered. *Id.* (citations omitted).

Where, as here, a premature request for declaratory relief regarding the duty to indemnify is joined to a ripe request for declaratory relief regarding the duty to defend, the Court may retain jurisdiction over the latter request and dismiss without prejudice the premature request while the state-court suit is ongoing. *See, e.g., Atain Specialty Ins. Co. v. Sanchez*, No. 8:17-cv-1600, 2018 WL 1991937, at *4 (M.D. Fla. Apr. 27, 2018); *Suniland Meat*

*& Fish, Inc. v. Century Sur. Co.*, No. 16-61302-Civ, 2016 WL 8738384, at *6–7 (S.D. Fla. Oct. 11, 2016); *Auto-Owners Ins. Co. v. Deerlake Homeowners Ass'n, Inc.*, No. 2:11-cv-00215, 2012 WL 1038748, at *3 (N.D. Ga. Mar. 27, 2012); *State Farm Fire & Cas. Co. v. Myrick*, No. 206-cv-359-WKW, 2007 WL 3120262, at *3, 5 (M.D. Ala. Oct. 23, 2007).

In conclusion, based upon the above analysis, the Court declines Old Republic's invitation to abstain from exercising jurisdiction over Plaintiff's declaratory claim regarding its duty to defend, but the Court will dismiss without prejudice the case as to the duty-to-indemnify issue.

## II. Analysis: Motion for Summary Judgment

In the summary judgment portion of its Motion, Old Republic argues that the Complaint in the Underlying Lawsuit fairly and potentially brings it under the Policy.[5] Not surprisingly, Plaintiff disagrees. More specifically, in rebuttal, Plaintiff argues: (1) the Theft or Conversion of Funds Exclusion of the Policy precludes coverage for Old Republic's claim for damages pled in the Underlying Lawsuit against the Fontecilla Defendants; (2) the only coverage available under the Policy for Old Republic's claim against the Fontecilla Defendants, as alleged in the Underlying Lawsuit, is pursuant to Coverage Extension 6, which has a limit of $100,000 for the Policy Period, including Damages and Claim Expenses; and (3) once Plaintiff incurs $100,000 for Damages and Claim Expenses (which includes defense costs) for Old Republic's claims in the Underlying Lawsuit, Plaintiff will have no further duty to defend the Fontecilla Defendants in the Underlying Lawsuit or to indemnify them for any judgment for damages Old Republic recovers against them in the Underlying Lawsuit. ECF No. 54 at p. 2. The crux of Plaintiff's argument is that:

> All of the claims made and damages alleged in the Underlying Lawsuit arise out of the theft, conversion, or misappropriation of the loan proceeds by persons with no authority to act on behalf of the subject property owners. Had the imposters not stolen the loan proceeds, Old Republic would have no damages or a cause of action against the Insureds. Thus, any allegations

---

[5] Additionally, Old Republic argues: 1) Coverage Extension 6 (Section I, Paragraph C, Subparagraph 6 of the Policy) is not applicable to the coverage determination and even if it was applicable, that provision is ambiguous; and 2) Plaintiff unreasonably delayed in invoking the exclusion and the coverage extension and, thereby, waived its right to do so; however, because the Court finds that it *cannot* conclude that Old Republic's allegations in the Underlying Lawsuit "casts the pleadings wholly within the exclusion", the Court need not and will not address these arguments.

involving the Insureds' alleged actions prior to disbursing the funds still involve alleged damages resulting from theft, conversion, or misappropriation of funds.

*Id.* at p. 3. Plaintiff's arguments miss the mark.

### Summary Judgment Standard

Summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). Thus, the entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* Rule 56, moreover, "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted).

"A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon*, 196 F.3d at 1358. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Abbes v. Embraer Servs., Inc.*, 195 F. App'x 898, 899-900 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)). When deciding whether summary judgment is appropriate, "the evidence, and all inferences

drawn from the facts, must be viewed in the light most favorable to the non-moving party." *Bush v. Houston County Commission*, 414 F. App'x 264, 266 (11th Cir. 2011).

**Duty to Defend Legal Standard**

As previously mentioned, "[u]nder New York law, . . . '[i]t is well settled that an insurance company's duty to defend is broader than its duty to indemnify. Indeed, the duty to defend is 'exceedingly broad' and an insurer will be called upon to provide a defense whenever the allegations of the complaint 'suggest . . . a reasonable possibility of coverage.'" *Dresser-Rand Co. v Ingersoll Rand Co.*, 14 CIV. 7222 KPF, 2015 WL 4254033, at *6 (S.D. N.Y. July 14, 2015) (quoting *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006)); *accord Euchner–USA, Inc.*, 754 F.3d at 140 ("In New York, an insurer's duty to defend is 'exceedingly broad'".). Moreover, the insurer bears the burden of establishing that an exclusion under the insurance policy applies. *See, e.g., Consol. Edison Co. of N.Y., Inc. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 220 (2002). In fact, the Second Circuit has recognized that:

> New York courts have consistently held that ... an insurer seeking to avoid its duty to defend bears a heavy burden. That burden, in practice, is seldom met. Indeed, before an insurance company is permitted to avoid policy coverage, it must . . . establish that the exclusions or exemptions claimed apply in the particular case, and that they are subject to no other reasonable interpretation. To avoid the duty to defend, the insurer must show that the allegations in the underlying complaint are solely and entirely within the policy's exclusions from coverage. *A court applying New York law, then, should only excuse an insurer from its duty to defend if it can be concluded as a matter of law that there is no possible factual or legal basis on which the insurer might eventually be held to indemnify the insured*.

*Barney Greengrass, Inc. v. Lumbermens Mut. Cas. Co.*, 445 F. App'x. 411, 413 (2nd Cir. 2011) (quoting *City of Johnstown v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1148 (2d Cir.1989) (emphasis in original) (internal alterations, quotation marks, and citations omitted). And, under New York law, "[t]o the extent that there is any ambiguity in an exclusionary clause, [New York courts] construe the provision in favor of the insured. Moreover, exclusions or exceptions from policy coverage are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction." *Cragg v. Allstate Indem. Corp.*, 17 N.Y.3d 118, 122 (2011) (internal alteration and quotation marks omitted). Further, under New York law, insurance policies are read "in light of 'common speech' and the reasonable expectations of a businessperson." *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383 (2003).

On a practical level, this means that "[a]n insurer's duty to defend claims made against its policyholder is ordinarily ascertained by comparing the allegations of a complaint with the wording of the insurance contract." *Stein v. Northern Assur. Co. of America*, 617 F. App'x 28, 30 (2nd Cir. 2015) (quoting *IBM Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004). "Accordingly, '[i]t is well established that a liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered.'" *Id.* (quoting *Fitzpatrick v. Am. Honda Motor Co.*, 575 N.E.2d 90, 90 (1991)) (alterations in original). "Further, an insurer is required to pay 100 percent of an insured's defense costs, for both covered and non-covered claims, when the non-covered claims are 'intertwined' with covered ones." *Columbus McKinnon Corp. v Travelers Indem. Co.*, 367 F Supp 3d 123, 141-42 (S.D.N.Y 2018) (citing *Travelers Cas. & Sur. Co. v. Alfa Laval, Inc.*, 37 Misc.3d 1230(A), 2011 WL 9557466, at *3 (Sup. Ct., N.Y. County 2011) ("The obligation to defend is readily understood and its requirement is clear – the insurer must afford a defense to the insured for covered as well as non-covered claims if the latter are intertwined with covered claims."), *aff'd as modified*, 954 N.Y.S.2d 23 (1st Dep't 2012). However, "[t]he insurer's duty to defend is . . . not an interminable one, and will end if and when it is shown unequivocally that the damages alleged would not be covered by the policy." *Stein*, 617 F. App'x at 30 (quoting *Sturges Mfg. Co. v. Utica Mut. Ins. Co.*, 332 N.E.2d 319, 323 (N.Y. 1975). "In other words, where an insurer's duty to defend turns on an unresolved factual dispute, 'the duty to defend lasts only until the factual ambiguity is resolved in favor of the insurer.'" *Id.* at 30-31 (quoting *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 622 (2d Cir.2001)) (other citations omitted); *see also Avondale Indus., Inc. v. Travelers Indem. Co.*, 774 F. Supp. 1416, 1425 (S.D.N.Y. 1991) (The "duty to defend continues until judicial determination, either in [the] underlying action or in [the] coverage action, of [the] issue relevant to coverage." (alterations in original and citations omitted)).

## Analysis

### A. Relevant Policy Provisions

With respect to the Professional Liability Claims Made Coverage, Section I.A of the Policy states:

> Subject to the applicable Limits of Insurance, the Company will pay on behalf of the Insured all Damages and Claim Expenses in excess of the Retention[6] that an Insured becomes legally obligated to pay as a result of a covered Claim first made against the Insured during the Policy Period and reported in writing to the Company during the Policy Period, or Extended Reporting Period if applicable, for a Wrongful Act by an Insured or by anyone for whom the Insured is legally responsible, in the rendering of Professional Services[.]

ECF No. 1-2 at p. 16 of 53 (HIIG TA ES 00 01 06 16, p. 1 of 16). In the Policy, "professional services" is defined to mean "the following services when performed by the Insured in the ordinary conduct of the Insured's profession for or on behalf of a customer or client for a fee or other compensation: 1. Title Insurance Agent; 2. Title Abstractor; 3. Title Searcher; 4. Escrow Agent; 5. Closing Agent; 6. Notary Public; 7. Public Records Searcher (including UCC searches); 8. Corporate Document Searcher; 9. Flood Zone Certifier; 10.Witness Closer." *Id.* at p. 22 of 53 (HIIG TA ES 00 01 06 16, p. 7 of 16). The Policy defines the term "wrongful act" as "any actual or alleged breach of duty, negligent act, error, omission or Personal Injury offense committed by an Insured solely in the performance of, or failure to perform, Professional Services." *Id.* at p. 23 of 53 (HIIG TA ES 00 01 06 16, p. 8 of 16).

> In relevant part, the Theft or Conversion of Funds Exclusion of the Policy states:

> This Policy does not apply to any Claim, and the Company is not obligated to defend or pay Damages or Claim Expenses for any Claim alleging, arising out of, based upon, relating to, or attributable to, directly or indirectly . . . Other than as provided in SECTION I — INSURING AGREEMENT, Paragraph B — Coverage Extensions, Sub-paragraph 6 —Theft or Conversion of Funds . . . 1. any commingling, improper use, theft, stealing, conversion, embezzlement or misappropriation of funds or accounts[.]

*Id.* at pp. 23-24 of 53 (HIIG TA ES 00 01 06 16, pp. 8-9 of 16). It appears that there is a typo in the Policy as there is no Sub-paragraph 6 under Section I, Paragraph B. However, Section I, Paragraph C, Subparagraph 6, which the Parties referred to in their briefs as "Coverage Extension 6", appears to contain the language upon which Plaintiff's argument rests. In relevant part, that provision states:

> The Company shall reimburse the Insured for Damages and Claim Expenses arising out of the loss of the funds of others in the Insured's care, custody or control as a result of theft, stealing, conversion or misappropriation. . . . The

---

[6] It should be noted that Plaintiff does not assert any arguments suggesting that the Fontecilla Defendants failed to comply with the Retention provisions of the Policy.

> maximum payment by the Company for Damages and Claim Expenses
> pursuant to this SECTION I.C.6. — Theft of Funds, shall be $100,000,
> regardless of the number of such Claims or Insureds during the Policy Period.

*Id.* at p. 18 of 53 (HIIG TA ES 00 01 06 16 at p. 3 of 16). The Parties do not dispute that this
is the "Coverage Extension 6" to which they refer in their briefs.

The Theft or Conversion of Funds Exclusion excludes from coverage claims arising
out of or related to theft or conversion of funds. Furthermore, the Policy limits in Section 1,
Paragraph C, Subparagraph 6 (the Coverage 6 Extension) are invoked if claims and expenses
arise out of the loss of the funds of others in the Insured's care due to theft, stealing,
conversion, or misappropriation (by parties other than the Insureds[7]). Thus, the common
theme in these two exclusion provisions is theft, embezzlement, improper use, or conversion
of funds. Unfortunately for Plaintiff, however, the complaint in the Underlying Lawsuit
asserts allegations that are not limited to the loss of funds due to theft, stealing, conversion,
misuse, or misappropriation. For instance, in the Underlying Lawsuit, Old Republic alleges

---

[7] The named insureds under the Policy are Daniela Fontecilla, P.A. and the Law Offices of
Daniela Fontecilla PA. ECF No. 1-2 at p. 14 of 53 (FORM-SCHED 08 12). The complaint
in the Underlying Lawsuit, is asserted against Daniela Fontecilla, P.A. and the Law Offices
of Daniela Fontecilla PA. That complaint, moreover, alleges that at all times material Daniela
Fontecilla, P.A. and the Law Offices of Daniela Fontecilla PA were "Old Republic's title
policy issuing agents, with limited authority to issue title commitments and policies on behalf
of Old Republic for loans secured by real property in Florida." ECF No. 1-3 at ¶¶ 7-8. The
complaint also alleges that Daniela Fontecilla, P.A. and the Law Offices of Daniela Fontecilla
PA "served as the escrow, title and closing agent for both the Bacon Loan and the V&H Loan
and issued title insurance policies underwritten by Old Republic." *Id.* at ¶ 18. Accordingly,
the Court concludes that Daniela Fontecilla, P.A. and the Law Offices of Daniela Fontecilla
PA were the Insureds under the Policy and that Old Republic is suing them in the Underlying
Lawsuit for professional services that they allegedly conducted in relation to the Bacon and
V&H loans. Importantly, Plaintiff does not suggest or argue that Daniela Fontecilla, P.A. and
the Law Offices of Daniela Fontecilla PA were not its Insureds. Nor does Plaintiff argue or
suggest that Daniela Fontecilla, P.A. and the Law Offices of Daniela Fontecilla PA did not
conduct professional services in relation to the Bacon and V&H loans. As previously
mentioned, in its opposition brief, Plaintiff limited its arguments to: 1) the Theft or
Conversion of Funds Exclusion precludes coverage for Daniela Fontecilla, P.A. and the Law
Offices of Daniela Fontecilla PA in the Underlying Lawsuit; and 2) the Coverage Extension
limits Plaintiff's defense and indemnity obligations in the Underlying Lawsuit. Thus, other
than the Parties' disputes related to the applicability and limitations of the Policy's Theft or
Conversion of Funds Exclusion and Coverage Extension 6, there is no dispute that the
Underlying Lawsuit against Daniela Fontecilla, P.A. and the Law Offices of Daniela
Fontecilla PA implicates coverage under the Policy.

that "Fontecilla and Fontecilla P.A. were not authorized to commit the company to risk in excess of $lm (sic.) by issuing policies over that amount without prior authorization from Old Republic." ECF No. 1-3 at ¶ 9. Old Republic further alleges that "Fontecilla and Fontecilla P.A. also issued a mortgagee policy in favor of V&H in the amount of $1.3m, which exceeded her authorized limit of $1m, without seeking specific approval from Old Republic." *Id.* at ¶ 44. Moreover, in Count IV of its breach of contract claim, Old Republic alleges:

> Fontecilla and Fontecilla P.A. had an agreement with TCM to serve as the closing, escrow and title agent on the V&H Loan. As the closing, escrow and title agent on the V&H Loan, Fontecilla and Fontecilla P.A. owed duties to TCM to ensure that the V&H Loan documents were properly executed, that the person executing was authorized to bind V&H, and that the loan proceeds were properly disbursed. *In addition, Fontecilla and Fontecilla P.A. were obligated to remain within their limit of contractual authority when issuing title policies. The V&H mortgagee policy in the amount of $1.3m exceeded the limits of Fontecilla and Fontencilla P.A.'s authority of $1m.* In reliance upon its reasonable expectation that Fontecilla and Fontecilla P.A. would faithfully execute their duties, TCM funded the V&H Loan. In reliance upon its reasonable expectation that Fontecilla and Fontecilla P.A. would faithfully execute their duties, Old Republic issued a title insurance policy insuring the V&H Loan for TCM. Fontecilla and Fontecilla P.A. breached their duties in that they failed to retain control over the closing and loan documents, to ensure that the V&H Loan documents were in fact properly executed, to properly disburse the funds, *and to remain within the limits of their authority to issue policies underwritten by Old Republic.* As a result of Fontecilla and Fontecilla P.A's breaches, Old Republic has been damaged.

*Id.* at ¶¶ 78-83 (emphasis added). Under these allegations, there is a possible factual or legal basis on which the Fontecilla Defendants might be held liable for purportedly exceeding their authority with respect to the V&H Loan – irrespective of whether there was a scheme involving theft, stealing, conversion, misuse, or misappropriation of funds. Meaning had the purported theft, stealing, conversion, misuse, or misappropriation of funds never occurred, under the allegations set forth in the Underlying Lawsuit's complaint, Old Republic would still potentially have claims against the Fontecilla Defendants for their alleged actions in exceeding their $1 million authority in relation to the V&H loan.[8] As a result, the Court *cannot*

---

[8] Additionally, under the allegations asserted in the Underlying Lawsuit, the Fontecilla Defendants could be held liable for breach of contract due to their alleged failure to maintain control over closing and loan documents regardless of whether the resulting funds were a part of a theft, stealing, conversion, misuse, or misappropriation scheme. Indeed, such a claim is

conclude that Old Republic's allegations in the Underlying Lawsuit "casts the pleadings wholly within the exclusion" set forth in the Policy. *See Stein*, 617 F. App'x at 30 ("'To be relieved of its duty to defend on the basis of a policy exclusion, the insurer bears the heavy burden of demonstrating that the allegations of the complaint cast the pleadings wholly within that exclusion.' In addition, an insurer may only disclaim its duty to defend if it has demonstrated, as a matter of law, that 'there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision.'") (quoting *Frontier Insulation Contractors. v. Merch. Mut. Ins. Co.*, 690 N.E.2d 866, 868–69 (N.Y. 1997)). The Court, therefore, finds that Plaintiff has a duty to defend the Fontecilla Defendants in the Underlying Lawsuit. *See Barney Greengrass, Inc. v. Lumbermens Mut. Cas. Co.*, 445 F. App'x. at 413; *see also Value Wholesale, Inc. v KB Ins. Co. Ltd.,* 450 F Supp 3d 292, 303 (E.D. N.Y. 2020), *appeal dismissed*, 2d Cir. 21-117 (Apr. 29, 2021) ("'If the allegations of the complaint are even potentially within the language of the insurance policy, there is a duty to defend.'") (quoting *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 443 (2002)).

Accordingly, for the reasons set forth above, it is hereby **ORDERED and ADJUDGED** as follows:

1. Defendant Old Republic National Title Insurance Company's Motion for Summary Judgment or, In the Alternative, Motion to Dismiss (ECF No. 43) is **DENIED IN PART AND GRANTED IN PART**. As such, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's declaratory claim as to the duty-to-indemnify issue, and **GRANTS** summary judgment in favor of Defendant Old Republic National Title Insurance Company with respect to the duty-to-defend claim.

2. All pending motions not otherwise ruled upon herein are **DENIED AS MOOT**.

3. The Clerk is directed to **CLOSE** this case.

---

not necessarily contingent upon a finding that a third party stole, converted, misused, or misappropriated the funds.

**DONE AND ORDERED** in Chambers at Miami, Florida this 30th day of September 2021.

*Marcia G. Cooke*

MARCIA G. COOKE
United States District Judge

*Copies furnished to:*
*Jonathan Goodman, U.S. Magistrate Judge*
*Counsel of record*